UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.:

JOSE CORDERO,

    Plaintiff,

    v.

SAUL FUMERO, individually, THE SCHOOL
BOARD OF MIAMI-DADE COUNTY,
Florida, ALEXANDER DORADO,
individually, and the CITY OF HIALEAH, a
Florida Municipal corporation,

    Defendants.
_____/

## COMPLAINT
## INTRODUCTORY STATEMENT

1.     This is a civil action seeking money damages in excess of $30,000 dollars, exclusive

of costs, interest, and attorney's fees, against Defendants, SAUL FUMERO, individually, THE

SCHOOL BOARD OF MIAMI-DADE COUNTY, Florida, ALEXANDER DORADO, individually,

and the CITY OF HIALEAH, a Florida Municipal corporation.

2.     This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth and

Fourteenth Amendments to the United States Constitution. The United States District Court for the

Southern District of Florida has jurisdiction of this action under 42 U.S.C. § 1983, 28 U.S.C. § 1331

and 28 U.S.C. § 1343. Plaintiff further invokes the supplemental jurisdiction of the United States

District Court to hear pendant State tort claims arising under State law, pursuant to 28 U.S.C.

§1367(a).

3.     Plaintiff has fully complied with all conditions precedent to bringing this action

imposed by the laws of the State of Florida, and particularly by the provisions of § 768.28 of the Florida Statutes.

## PARTIES

4.     Plaintiff JOSE CORDERO (hereinafter "Plaintiff") is a resident of Hollywood, Broward County, state of Florida.

5.     At all times referred to herein, Defendant SAUL FUMERO [hereinafter FUMERO or Defendant SAUL FUMERO, or Defendant FUMERO] was employed by Defendant THE SCHOOL BOARD OF MIAMI-DADE COUNTY as an elementary school teacher at the James H. Bright and J.W. Johnson Elementary School, located in Miami-Dade County, Florida, Florida, and was acting under the direction and control of THE SCHOOL BOARD OF MIAMI-DADE COUNTY, Florida, and in such capacity as an agent, servant and employee of THE SCHOOL BOARD OF MIAMI-DADE COUNTY, Florida.

6.     At all times material hereto, Defendant, THE SCHOOL BOARD OF MIAMI-DADE COUNTY, Florida [hereinafter SCHOOL BOARD OF MIAMI-DADE COUNTY or Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY] is a Florida body corporate, organized and existing under the laws of the State of Florida, and located in Miami-Dade County, Florida. Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY is the fourth largest school district in the United States.  In this action, Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY acted under color of law, and through its agents, employees, and servants, including Defendant FUMERO, Claudine Winsor, and others.

7.     At all times referred to herein, Defendant ALEXANDER DORADO [hereinafter Defendant DORADO] was acting under color of law as a police officer for Defendant CITY OF HIALEAH, a Florida Municipal corporation, and in such capacity as an agent, servant, and employee

of  Defendant CITY OF HIALEAH, Florida Municipal corporation.

8.      Defendant CITY OF HIALEAH [hereinafter CITY, or Defendant CITY OF HIALEAH] is a Florida municipal corporation, organized and existing under the laws of the State of Florida, and located in Miami-Dade County, Florida.  In this cause, the CITY acted through its agents, employees, and servants, including Defendant DORADO, Kenyania L. Bryant, and others.

9.      Plaintiff sues Defendants FUMERO and DORADO in their individual capacities.

## FACTS COMMON TO ALL COUNTS

10.     At all times material hereto, Plaintiff was the biological father of J.C., a seven-year old male child with severe level 3 autism, including severe deficits in verbal and nonverbal social communication skills.

11.     At all times material hereto, J.C. required very substantial support and was able to speak only a few words, such as "milk."

12.     At all times material hereto, J.C. lived with Plaintiff and his biological mother, Magdalena Mora.  Mora was also the biological mother of her 25-year old daughter (J.C.'s half-sister, Mailyn Marin).  Plaintiff has no biological relationship to Mailyn Marin, and began dating Magdalena Mora when Mailyn Marin was a teenager.

13.     At a all times material hereto, both Magdalena Mora and Plaintiff worked their residence.  (Plaintiff is employee of Bravo Supermarkets and works in the meats department)

14.     At all times material hereto, Mailyn Marin lived in a different residence but returned to her mother's home most mornings to help prepare J.C. for school.

15.     By all accounts, J.C. was a loving (and much loved) child and could follow some basic commands, but generally, communication was difficult.   For example, J.C. could recognize some pictures (i.e., dinosaur) but was incapable of reading or writing.

16.     At all times material hereto, J.C. was a special needs student in the second grade at James H. Bright and J.W. Johnson Elementary School, located in Miami-Dade County, and the Southern District of Florida.

17.     At all times material hereto, J.C.'s special education teacher at the James H. Bright and J.W. Johnson Elementary School was Defendant FUMERO.

18.     At all times material hereto, there existed a debunked pseudoscience called facilitated communication, or FC.   In 1996, the Journal of the American Academy of Pediatrics published a commentary stating:

> The optimistic side of FC, that nonspeaking children could miraculously become competent communicators, is unfortunately a myth. The dark side of the phenomenon of FC includes false hope, false communication, family disruption, losses of job and reputation, and inappropriate use of scarce resources.  Unwitting pediatricians have accepted transcripts of FC that described sexual abuse by family members.  The result was removal of the child from the family and prosecution of the alleged perpetrator even though the evidence suggested that the communication came from the facilitator and not from the child.

Hostler, Sharon L., *Facilitated Communication*, Journal of the American Academy of Pediatrics, April 1996, 97 (4), 584-86.

19.     At all times material hereto, professional organizations who have issued statements against the use of FC include the American Psychological Association, the American Association on Intellectual and Developmental Disabilities, the American Academy of Pediatrics, the American Speech-Language-Hearing Association, and the International Society for Augmentative and Alternative Communication.

20.     At all times material hereto, communication methods like  FC are only valid and reliable if an autistic child is able to respond to basic questions (i.e., What color is your shirt?) asked *outside* the physical presence of the facilitator.  Unfortunately, they cannot.  As such, information

obtained from the facilitator is no more accurate than communication obtained through the use of Ouija boards or mediums who facilitate connections between the souls of the deceased and their loved ones.

21.    One type of FC is called hand over hand, wherein the facilitator guides the disabled (or autistic) person's hand to assist them in writing with a pen or pencil, or typing on a keyboard.

22.    At all times material hereto, information concerning the use of facilitated communication resulting in false and fictitious claims of sexual abuse was widely published and readily accessible on the internet with a simple Google search.

23.    On or about October 2017, Defendant FUMERO and J.C. used hand over hand to keep start a handwritten diary which Defendant FUMERO falsely and fictitiously claimed were the words of J.C., when in fact, they words of Defendant FUMERO.

24.    At all times material hereto, Defendant FUMERO falsely and fictitiously alleged that while using hand over hand he only held J.C.'s hand and J.C. himself manipulated a pencil, when in fact, the words written on the paper were the words of Defendant FUMERO only, not J.C.

25.    On October 30, 2017, Defendant FUMERO falsely and fictitiously reported that while using hand over hand J.C. accused Plaintiff of sexually abuse.

26.    Based on Defendant FUMERO's false claim of sexual abuse, J.C. was escorted to administrative offices at James H. Bright and J.W. Johnson Elementary School and the Florida Department of Children and Families and Defendant CITY OF HIALEAH's police department were notified.

27.    When Defendant ALEXANDER DORADO and fellow sex-crimes detective Kenyania L. Bryant arrived at James H. Bright and J.W. Johnson Elementary School, Defendant FUMERO was in the office of school principal Claudine Winsor along with Defendant CITY OF

HIALEAH police officers Javier Barrios and Fernando Gonzalez, Jr.

28.     At all times material hereto, school principal Claudine Winsor had knowledge of the background and credentials of all of the teachers at James H. Bright and J.W. Johnson Elementary School, including Defendant FUMERO.

29.     At all times material hereto, Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY and school principal Claudine Winsor knew that Defendant FUMERO had no formal or professional training in the use of hand over hand.

30.     At all times material hereto, Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY knew that facilitated communication was not scientifically accepted in the field of augmentative and alternative communication, and as such, did not endorse the use of facilitated communication.

31.     While in the administrative offices at James H. Bright and J.W. Johnson Elementary School, Defendant FUMERO falsely and fictitiously alleged that while using hand over hand (i.e., facilitated communication), J.C. "thanked [Defendant SAUL FUMERO] for allowing him to communicate with his father, since before that time, J.C. was unable to meaningfully communicate verbally or in writing, with anyone.

32.     While in the administrative offices at James H. Bright and J.W. Johnson Elementary School, Defendant FUMERO falsely and fictitiously alleged that while using hand over hand (i.e., facilitated communication), J.C. advised Defendant FUMERO that "he wanted to let him know a secret . . ."

33.     Defendant DORADO's police report detailed that, according to Defendant FUMERO, J.C.

wrote that his father was sexually assaulting him.   Mr. Fumero then asked J.C. what

he meant by that he was being sexually assaulted and he wrote that his father was getting his penis and poking him in the butthole.

* * *

Fumero asked him when was the last time and J.C. wrote that it was last night Sunday, October 29th [redacted] to him that his father came into his room with his penis out and was trying to poke him in the butt.

34.     Defendant FUMERO falsely and fictitiously alleged that, while using hand over hand, J.C. wrote that the abuse occurred when J.C. was alone with his father and that his mother "had no idea."

35.     At that time, the words written by J.C., a seven year-old non-verbal autistic child, included (with proper spelling) the words; abuse; sexually; touch; penis; serious; jail; pokes; touched; and kidding.

36.     Crime scene responded and noted what appeared to be a bruise towards the lower area of J.C.'s back.   Defendant FUMERO falsely and fictitiously alleged that J.C. wrote that the bruise occurred from Plaintiff holding J.C.'s back (ostensibly, to facilitate the rape of his own son).

37.     When Plaintiff arrived at James H. Bright and J.W. Johnson Elementary at approximately 2:10 pm to pick up his son at the end of the school day he was instead escorted to Defendant CITY OF HIALEAH's police department.

38.     At approximately 2:18 pm Defendant DORADO contacted Magdalena Mora (J.C.'s mother) and requested that she respond to the Defendant CITY OF HIALEAH's police department.

39.     At approximately 3:25 pm, Mora arrived at Defendant CITY OF HIALEAH's police department with her adult daughter, 25-year-old Mailyn Marin.

40.     When Mora was advised of the allegations she nearly fainted.  Defendant DORADO further reported that Mora "was in disbelief as well as her daughter Ms. Marin that J.C. could

express himself that way due to autism."

41.     When Mora and Marin were advised by Defendant DORADO that J.C. "could communicate in writing by the means of a technique called hand over hand assistance," Defendant DORADO reported that both Mora and Marin "stated that they were unaware J.C. could write."

42.     In a "No Action Memo" dated March 6, 2018, Assistant State Attorney Laura Cespedes wrote while using hand over hand, with Defendant FUMERO as facilitator, J.C. wrote that "he felt safe with his mother and "she cares for me and my sister, she cares about me too." Cespedes's memorandum added: "The victim's mother nearly fainted when discussing the allegations with detective and appeared completely unaware of any abuse." The victim's 25-year-old sister seemed equally surprised to hear of any abuse and had no idea her brother was capable of communicating in any way."

43.     Defendant FUMERO accompanied J.C. to Child Protective Services, where J.C. was examined.  J.C. was also questioned using hand over hand, with Defendant FUMERO again serving as the facilitator.

44.     In response to questions by Child Protective Services members, Defendant FUMERO falsely and fictitiously used hand over hand to allege that the seven year-old non-verbal autistic J.C. wrote (with no corrections for grammar or spelling) that:

> • "He always hits me afterward.  He really needs help."
>
> • "Those are from my dad grabbing me to poke me with his penis."
>
> • "My anus with his penis."
>
> • "He puts it in me.  It fucking hurts a lot.  Yes blood and his semon.  His baby making juice. Yes white see though and sticky."
>
> • "No but he puts mine in his mouth.  No just penetrate my anus."

• "I'm very smart"

• "I will write but won't talk.  Yes but Fumero stays."

• "Yes its Magdalena. . ."

45.    Plaintiff was interviewed by Defendant DORADO and was fully and completely cooperative.  Plaintiff truthfully denied sexually abusing J.C.

46.    At 5:20 pm, Defendant DORADO arrested Plaintiff f.  Defendant DORADO's police report alleged that "Mr. Cordero had no objections and was falling asleep as I was completing the arrest affidavit."

47.    Plaintiff was charged by Defendant DORADO with: 1). sexual battery on a minor under the age of 12, a life felony; 2). lewd and lascivious molestation against a victim less than 12 years of age; and 3).  sexual activity with a minor.

48.    The arrest of Plaintiff by Defendant DORADO was in the absence of probable cause, insofar as Defendant DORADO failed to conduct a reasonable investigation to establish probable cause, as required under the Fourth Amendment.

49.    At all times material hereto, every reasonable police officer in the position of Defendant DORADO would have known, or in the exercise of reasonable diligence should have known, that hand over hand had long been called into question and FC was a debunked pseudoscience.

50.    At all times material hereto, every reasonable police officer in the position of Defendant DORADO would have known, or in the exercise of reasonable diligence should have known, that hand over hand had long been associated with a history of false claims of sexual abuse and rape.

51.    At all times material hereto, Defendant DORADO had actual knowledge that both

Mora and Marin were "in disbelief" . . . that J.C. could express himself that way due to autism."

52.     At all times material hereto, Defendant DORADO had actual knowledge that both J.C.'s mother (Mora) and sister (Marin) "were unaware J.C. could write" (using hand-over-hand).

53.     At all times material hereto, Defendant DORADO had actual knowledge that J.C. was allegedly able to communicate via hand over hand only when Defendant FUMERO acted as the facilitator.

54.     At all times material hereto, Defendant DORADO failed to reasonably investigate whether the allegations of rape and sexual abuse were reliable by asking J.C. basic questions (i.e., "What color is your shirt") while Defendant FUMERO out of the room and thereafter allowing Defendant FUMERO to re-enter the room to facilitate J.C.'s responses.

55.     At all time material hereto, Defendant DORADO failed to follow basic investigative protocol by establishing that J.C., a seven-year old autistic minor child, knew the difference between the truth and a lie (i.e., by asking J.C. basic questions while Defendant FUMERO out of the room concerning the difference between the truth and a lie and thereafter allowing Defendant FUMERO to re-enter the room to facilitate J.C.'s responses).

56.     On November 1, 2017, Defendant FUMERO falsely and fictitiously used hand over hand to allege that the seven-year-old non-verbal autistic J.C. wrote an additional statement with new allegations, to wit:

> Hello my name is [J.C.].   This is my journal and this is my story I am a survivor thanks to Mr. Fumero.  From the bottom of my heart thank you.  My dad was abusing me for over 2 years.  He would wait to butt rape me when we were all alone.  He would finish and bathe me so no one could find out .  He was always very careful to cover his tracks.  Always not to let anyone know.  I did [illegible] until he bathe me and I had proof.  I want everyone to hear my story and know how special I am and how I hate having to do this to Fumero and my sister.  My mom had no idea she was always working.  Please give this to Detective Dorado.

57.     On November 2, 2017, Defendant DORADO was notified that "J.C. started writing again" and that new allegations had been reported to the child abuse hotline.

58.     J.C. was again removed to the office of school principal Claudine Winsor where Defendant FUMERO falsely and fictitiously used hand over hand to allege that the seven-year-old non-verbal autistic J.C. wrote (in part):

> Hello I need the police.  I am not safe at home my mom is trying to smother me in my sleep.  My sister saved me.  Last night and the night before.  Please I don't want her around me.  I am playing with my life and it's not a fun game.  I should have told you how evil she is.  She as schizophrenic and doesn't take her medicine like shes supposed to.   My sister has always tried keeping me safe.  But they, my parents, would team up and abuse both of us.  My mom she would make her do things to me like make my sister perform oral sex on me.   My sister has been getting raped since I was 3-4 years old.  She has been conditioned to be a sex slave for my father.  This is all a very ugly and disturbing horror story but all true!

59.     School principal Claudine Winsor thereafter removed J.C. from Defendant FUMERO's classroom.

60.     In a "No Action Memo" dated March 6, 2018, Assistant State Attorney Laura Cespedes wrote that when questioned by detectives, Mailyn Marin , the 25-year-old adult sister of J.C., "unwaverlingly denied knowing of any abuse, being abused, or abusing the victim herself.  She insisted her mother had always been a good person and would never so much as raid[] a hand against her.  She was very emotional and surprised by the allegations."

61.     On November 3, 2017, detectives questioned Defendant FUMERO for the first time concerning whether he had any training in the use of hand over hand.   Defendant FUMERO admitted that he had no formal or professional training in the use of hand over hand.

62.     J.C. never again communicated with any other teacher using hand over hand.

63.     On December 4, 2017, after 35 days in custody, the State of Florida agreed to Plaintiff's release from jail on his own recognizance (ROR).

64.     DNA tests were subsequently negative for any evidence of sexual abuse, and no criminal charges were ever filed against Plaintiff or any other person.

65.     The conduct of Defendant FUMERO and Defendant DORADO, as set forth herein, occurred under color of state law.

## CAUSES OF ACTION

### COUNT I
### FALSE ARREST/FALSE IMPRISONMENT CLAIM AGAINST DEFENDANT DORADO, INDIVIDUALLY, COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendant DORADO, individually, in Count I, Plaintiff states:

66.     Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations of paragraphs 1 through 65.

67.     Defendant DORADO proximately caused the arrest of Plaintiff in the absence of probable cause that Plaintiff committed any criminal offense.

68.     The conduct of Defendant DORADO towards Plaintiff, as set forth herein, was objectively unreasonable, in violation of Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 to be free from arrest in the absence of probable cause that Plaintiff committed any criminal offense.

69.     No reasonable police officer in the position of Defendant DORADO could have relied upon the claim that J.C. spontaneously began writing words and sentences with near-perfect spelling, punctuation, and grammar, without even first learning to write the letters of the alphabet, after a life time of lacking the ability to write.

70.     At all times material hereto, Defendant DORADO had actual knowledge that both Magdalena Mora and Mailyn Marin (J.C.'s mother and half-sister) were completely unaware that J.C. developed the ability to write, or otherwise meaningfully "express himself" in sophisticated

terms using mature language, due to autism.

71.     At all times material hereto, Defendant DORADO knew, or in conducting a reasonable investigation should have known, that Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY did not endorse the use of facilitated communication since it was not scientifically accepted in the field of augmentative and alternative communication.

72.     At all times material hereto, Defendant DORADO knew, or in the process of conducting a reasonable investigation should have known, that Defendant FUMERO had no formal or professional training in the use of hand over hand.

73.     At all times material hereto, Defendant DORADO either had actual notice that FC was a known pseudoscience and unreliable, or turned a blind eye to exculpatory evidence, including the decades long history of false claims of abuse associated with FC. *See*, Wikipedia, *List of abuse allegations made through facilitated communication* (collecting cases).[1]

74.     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation.

75.     As a further direct and proximate result of the conduct of Defendant DORADO, Plaintiff suffered loss of his liberty and freedom, mental anguish and loss of capacity for the enjoyment of life.   Plaintiff's losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's civil rights.   Plaintiff has also agreed to pay the undersigned a reasonable fee for his services, herein.

WHEREFORE, Plaintiff prays:

---

[1]
https://en.wikipedia.org/wiki/List_of_abuse_allegations_made_through_facilitated_communication

    i.       Judgment for compensatory damages in excess of $ 30,000 dollars;

    ii.      Judgment for punitive damages;

    iii.     Cost of suit;

    iv.     Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

    v.       Trial by jury as to all issues so triable; and

    vi.     Such other relief as this Honorable Court may deem just and appropriate.

### COUNT II
### FALSE ARREST/FALSE IMPRISONMENT CLAIM AGAINST
### DEFENDANT CITY OF HIALEAH

For his cause of action against Defendant CITY OF HIALEAH, in Count II, Plaintiff states:

76.    Plaintiff realleges and adopts, as if fully set forth in Count II, the allegations of paragraphs 1 through 65.

77.    Defendant DORADO proximately caused Plaintiff's arrest in the absence of probable cause that Plaintiff committed any criminal offense.

78.    No reasonable police officer in the position of Defendant DORADO could have relied upon the claim that J.C. spontaneously began writing words and sentences with near-perfect spelling, punctuation, and grammar, without even first learning to write the letters of the alphabet, after a life time of lacking the ability to write.

79.    At all times material hereto, Defendant DORADO had actual knowledge that both Magdalena Mora and Mailyn Marin (J.C.'s mother and half-sister) were completely unaware that J.C. developed the ability to write, or otherwise meaningfully "express himself" in sophisticated terms using mature language, due to autism.

80.    At all times material hereto, Defendant DORADO knew, or in conducting a reasonable investigation should have known, that Defendant SCHOOL BOARD OF MIAMI-DADE

COUNTY did not endorse the use of facilitated communication since it was not scientifically accepted in the field of augmentative and alternative communication.

81.     At all times material hereto, Defendant DORADO knew, or in the process of conducting a reasonable investigation should have known, that Defendant FUMERO had no formal or professional training in the use of hand over hand.

82.     At all times material hereto, Defendant DORADO either had actual notice that FC was a known pseudoscience and unreliable, or turned a blind eye to exculpatory evidence, including the decades long history of false claims of abuse associated with FC. *See*, Wikipedia, *List of abuse allegations made through facilitated communication* (collecting cases).[2]

83.     The conduct of Defendant DORADO towards Plaintiff, as set forth herein, was unreasonable and unwarranted and without legal authority, and constitutes false arrest/false imprisonment of Plaintiff under Florida law.

84.     The false arrest/false imprisonment of Plaintiff by Defendant DORADO occurred during the course and scope of Defendant DORADO's employment as a police officer for Defendant CITY OF HIALEAH.

85.     As a direct and proximate result of the acts described above, Plaintiff suffered grievously, has been brought into public scandal, with great humiliation, mental suffering and damaged reputation.

86.     As a further direct and proximate result of the conduct of Defendant CITY OF HIALEAH, Plaintiff suffered loss of his liberty and freedom, mental anguish and loss of capacity for the enjoyment of life. The losses are either permanent or continuing and Plaintiff will suffer the

---

[2] See *supra*, footnote 1.

losses in the future, in violation of Plaintiff's rights.

WHEREFORE, Plaintiff prays:

      i.     Judgment for compensatory damages in excess of $ 30,000 dollars;

      ii.    Cost of suit;

      iii.   Trial by jury as to all issues so triable; and

      iv.   Such other relief as this Honorable Court may deem just and appropriate.

**COUNT III**
**FALSE ARREST/FALSE IMPRISONMENT CLAIM AGAINST**
**DEFENDANT DORADO, INDIVIDUALLY**

For his cause of action against Defendant DORADO, in Count III, Plaintiff states:

87.    Plaintiff realleges and adopts, as if fully set forth in Count III, the allegations of paragraphs 1 through 65.

88.    Defendant DORADO proximately caused Plaintiff's arrest in the absence of probable cause that Plaintiff committed any criminal offense.

89.    No reasonable police officer in the position of Defendant DORADO could have relied upon the claim that J.C. spontaneously began writing words and sentences with near-perfect spelling, punctuation, and grammar, without even first learning to write the letters of the alphabet, after a life time of lacking the ability to write.

90.    At all times material hereto, Defendant DORADO had actual knowledge that both Magdalena Mora and Mailyn Marin (J.C.'s mother and half-sister) were completely unaware that J.C. developed the ability to write, or otherwise meaningfully "express himself" in sophisticated terms using mature language, due to autism.

91.    At all times material hereto, Defendant DORADO knew, or in conducting a reasonable investigation should have known, that Defendant SCHOOL BOARD OF MIAMI-DADE

COUNTY did not endorse the use of facilitated communication since it was not scientifically accepted in the field of augmentative and alternative communication.

92.     At all times material hereto, Defendant DORADO knew, or in the process of conducting a reasonable investigation should have known, that Defendant FUMERO had no formal or professional training in the use of hand over hand.

93.     At all times material hereto, Defendant DORADO either had actual notice that FC was a known pseudoscience and unreliable, or turned a blind eye to exculpatory evidence, including the decades long history of false claims of abuse associated with FC. *See*, Wikipedia, *List of abuse allegations made through facilitated communication* (collecting cases).[3]

94.     The conduct of Defendant DORADO towards Plaintiff, as set forth herein was unreasonable and unwarranted and without legal authority, and constitutes false arrest/false imprisonment of Plaintiff under Florida law.

95.     Alternatively to the allegations set forth in Count III, if the false arrest/false imprisonment of Plaintiff was proximately caused by conduct occurring outside the course and scope of Defendant DORADO's employment or was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, then the false arrest/false imprisonment of Plaintiff was committed by Defendant DORADO in his individual capacity.

96.     As a direct and proximate result of the acts described above, Plaintiff suffered grievously, has been brought into public scandal, with great humiliation, mental suffering and damaged reputation.

---

[3]

See *supra*, footnote 1.

97. As a further direct and proximate result of the conduct of Defendant DORADO, Plaintiff suffered loss of his liberty and freedom, mental anguish and loss of capacity for the enjoyment of life. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.

WHEREFORE, Plaintiff prays:

      i.      Judgment for compensatory damages in excess of $ 30,000 dollars;

      ii.     Judgment for punitive damages;

     iii.    Cost of suit;

     iv.    Trial by jury as to all issues so triable; and

     v.     Such other relief as this Honorable Court may deem just and appropriate.

<u>**COUNT IV**</u>
<u>**NEGLIGENCE AGAINST DEFENDANT SCHOOL BOARD OF MIAMI-DADE COUNTY**</u>
(false report of a crime)

For his cause of action against Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY in Count IV, Plaintiff states:

98. Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations of paragraphs 1 through 65.

99. Defendant FUMERO falsely reported to Defendant DORADO and other members of Defendant CITY OF HIALEAH's police department that with the assistance of facilitated communication (i.e., hand over hand) J.C. alleged in writing that he had been sexually assaulted by his father, when in fact, as Defendant FUMERO knew, the allegations were false (since it was Defendant FUMERO and not J.C., who authored the writings and allegations).

100. The conduct of Defendant FUMERO, as set forth herein, occurred during the course and scope of Defendant FUMERO's employment as a school teacher for Defendant SCHOOL

BOARD OF MIAMI-DADE COUNTY.

101.    At all times material hereto, Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY owed Plaintiff a duty to not make false reports of a crime to law enforcement authorities, in reckless disregard for the rights and safety of others, including Plaintiff, or under circumstances where Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY knew or should have known that the false reports of a crime were likely to cause harm to the accused.

102.    Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY breached it duty to Plaintiff by falsely reporting to Defendant DORADO and other members of Defendant CITY OF HIALEAH's police department that with the assistance of facilitated communication (i.e., hand over hand) J.C. alleged in writing that he had been sexually assaulted by his father, Plaintiff CORDERO.

103.    As a foreseeable consequence of the conduct of Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY, Plaintiff was arrested for the rape and sexual assault of his own son, a minor child.   Without the incorrect or false claims made by Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY Plaintiff would not have been arrested.

104.    As a direct and proximate result of the negligence of Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, and mental suffering.

105.    As a further direct and proximate result of the conduct of Defendant  SCHOOL BOARD OF MIAMI-DADE COUNTY, Plaintiff suffered loss of liberty and freedom, mental and emotional pain and suffering, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights under Florida law.

WHEREFORE, Plaintiff prays:

      i.      Judgment for compensatory damages in excess of $ 30,000 dollars;

      ii.      Cost of suit;

      iii.      Trial by jury as to all issues so triable; and

      iv.      Such other relief as this Honorable Court may deem just and appropriate.

**COUNT V**
**NEGLIGENCE AGAINST DEFENDANT FUMERO**
(false report of a crime)

For his cause of action against Defendant FUMERO in Count V, Plaintiff states:

106.    Plaintiff realleges and adopts, as if fully set forth in Count V, the allegations of paragraphs 1 through 65.

107.    Defendant FUMERO falsely reported to Defendant DORADO and other members of Defendant CITY OF HIALEAH's police department that with the assistance of facilitated communication (i.e., hand over hand) J.C. alleged in writing that he had been sexually assaulted by his father, when in fact, as Defendant FUMERO knew, the allegations were false (since it was Defendant FUMERO and not J.C., who authored the writings and allegations).

108.    Alternatively to the allegations set forth in Count V, if the false report of a crime by Defendant FUMERO occurred outside the course and scope of Defendant FUMERO's employment or was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, then the false report of a crime was committed by Defendant FUMERO in his individual capacity.

109.    At all times material hereto, Defendant FUMERO owed Plaintiff a duty to not make false and fictitious reports of a crime to law enforcement authorities, in reckless disregard for the rights and safety of others, including Plaintiff, or under circumstances where Defendant FUMERO knew or should have known that the false reports of a crime were likely to cause harm to the

wrongfully accused.

110.    Defendant FUMERO breached his duty to Plaintiff by falsely reporting to Defendant DORADO and other members of Defendant CITY OF HIALEAH's police department that with the assistance of facilitated communication (i.e.,  hand over hand) J.C. alleged in writing that he had been sexually assaulted by his father, Plaintiff CORDERO.

111.    As a foreseeable consequence of the conduct of Defendant FUMERO, Plaintiff was arrested for the rape and sexual assault of his own son, a minor child.  Without the incorrect or false claims made by Defendant FUMERO Plaintiff would not have been arrested.

112.    As a direct and proximate result of the negligence of Defendant FUMERO, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, and mental suffering.

113.    As a further direct and proximate result of the conduct of Defendant FUMERO, Plaintiff suffered loss of his liberty and freedom, mental anguish and loss of capacity for the enjoyment of life. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.

WHEREFORE, Plaintiff prays:

    i.      Judgment for compensatory damages in excess of $ 30,000 dollars;

    ii.     Judgment for punitive damages;

    iii.    Cost of suit;

    iv.    Trial by jury as to all issues so triable; and

    v.     Such other relief as this Honorable Court may deem just and appropriate.

### COUNT VI
### NEGLIGENCE SUPERVISION AGAINST DEFENDANT
### SCHOOL BOARD OF MIAMI-DADE COUNTY

For his cause of action against Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY in Count VI, Plaintiff states:

114.    Plaintiff realleges and adopts, as if fully set forth in Count VI, the allegations of paragraphs 1 through 65.

115.    At all times material hereto, Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY had a duty exercise reasonable care and control of its agents, employees, and servants, including its elementary school teachers and administrators, while acting outside the scope of their employment, so as to prevent them from making the false report of a crime.

116.    At all times material hereto, Defendant FUMERO was an agent, servant, or employee of Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY.

117.    At all times material hereto, Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY knew, or had reason to know, that it had the ability to control its teachers and administrators, including Defendant FUMERO, during school hours, and with regard to their interaction with elementary school students.

118.    At all times material hereto, Defendant  SCHOOL BOARD OF MIAMI-DADE COUNTY knew, or should have known, of the necessity and opportunity for exercising such control of its teachers and administrators, including Defendant FUMERO, but failed or refused to do so.

119.    At all times material hereto, Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY knew that facilitated communication was not scientifically accepted in the field of augmentative and alternative communication, and as such, Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY did not endorse the use of facilitated communication in its classrooms.

120.    At all times material hereto, Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY and school principal Claudine Winsor knew that Defendant FUMERO was using hand

over hand in his classroom, notwithstanding the fact that facilitated communication was not scientifically accepted in the field of augmentative and alternative communication.

121.   At all times material hereto, Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY and school principal Claudine Winsor knew or in the exercise of ordinary care should have known that Defendant FUMERO was using hand over hand in his classroom, notwithstanding the fact that Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY knew that Defendant FUMERO had no formal or professional training in the use of hand over hand.

122.   While in the administrative offices at James H. Bright and J.W. Johnson Elementary School, Defendant FUMERO falsely and fictitiously alleged that while using hand over hand (i.e., facilitated communication), J.C. wrote that he was raped and sexually assaulted by Plaintiff.

123.   At that time, the words written by J.C., a seven year-old non-verbal autistic child, included (with proper spelling) the words; abuse; sexually; touch; penis; serious; jail; pokes; touched; and kidding.

124.   At all times material hereto, Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY and/or school principal Claudine Winsor knew or should have known that J.C. was a seven year-old non-verbal autistic child with no history of advanced language skills, including the use of written language, including but not limited to the writing and correct spelling of the words; abuse; sexually; touch; penis; serious; jail; pokes; touched; and kidding.

125.   Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY negligently failed to instruct, supervise, and control Defendant FUMERO in the performance of his duties as a teacher, to refrain from the use of hand over hand in his classroom with J.C. and others, notwithstanding the fact that Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY knew that facilitated communication was not scientifically accepted in the field of augmentative and alternative

communication.

126.    Defendant  SCHOOL BOARD OF MIAMI-DADE COUNTY negligently failed to instruct, supervise, and control Defendant FUMERO in the performance of his duties as a teacher, to refrain from using hand over hand to facilitate the false report of a crime, and otherwise verify that the child's allegations are reliable, i.e., that the autistic child is, at a minimum, able to respond to basic questions (i.e., What color is your shirt?) asked *outside* the physical presence of the facilitator.

127.    Defendant  SCHOOL BOARD OF MIAMI-DADE COUNTY negligently failed to instruct, supervise, and control Defendant FUMERO in the performance of his duties as a teacher, to refrain from the use of hand over hand in his classroom, notwithstanding the fact that Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY knew that Defendant FUMERO had no formal or professional training in the use of hand over hand.

128.    Defendant  SCHOOL BOARD OF MIAMI-DADE COUNTY negligently failed to instruct, supervise, and otherwise control Defendant FUMERO from using hand over hand to facilitate the false report of a crime, notwithstanding the fact that Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY knew that he allegations resulting from Defendant FUMERO use of hand over hand were false and fictitious.

129.    By permitting, or failing to prevent, the negligent and tortious conduct of Defendant FUMERO upon its premises, Defendant  SCHOOL BOARD OF MIAMI-DADE COUNTY knew, or in the exercise of reasonable diligence should have known, that the unlawful conduct of Defendant FUMERO created a foreseeable risk of harm towards others, including Plaintiff.

130.    As a direct and proximate result of the negligent failure of Defendant  SCHOOL BOARD OF MIAMI-DADE COUNTY to instruct, supervise, and control Defendant FUMERO in the performance of his duties, Defendant FUMERO had the opportunity to facilitate the false report

of a crime, and as a consequence thereof, caused the wrongs set forth herein.

131.    As a direct and proximate result of the negligence of Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, and mental suffering.

132.    As a further direct and proximate result of the conduct of Defendant SCHOOL BOARD OF MIAMI-DADE COUNTY, Plaintiff suffered loss of liberty and freedom, mental and emotional pain and suffering, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights under Florida law.

WHEREFORE, Plaintiff prays:

      i.      Judgment for compensatory damages in excess of $ 30,000 dollars;

     ii.      Cost of suit;

    iii.      Trial by jury as to all issues so triable; and

    iv.      Such other relief as this Honorable Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

133.    Plaintiff demands trial by jury on all issues so triable as of right.

**DATED** this ___4th___ day of March, 2020.

    By:___*s/. Hugh L. Koerner*_____
          Hugh L. Koerner
          Florida Bar No.: 716952
          Email: hlklaw@hughkoerner.com
          Hugh L. Koerner, P.A.
          Sheridan Executive Centre
          3475 Sheridan Street, Suite 208
          Fort Lauderdale, FL 33021
          Telephone: (954) 522-1235
          Facsimile:  (954) 522-1176
          *Attorneys for Plaintiff Jose Cordero*